269 P.2d 859

BRIMM

v.

CACHE VALLEY BANKING CO.

No. 7979.

Supreme Court of Utah.

April 26, 1954.

L. E. Nelson, Logan, for appellant.

George C. Heinrich, Logan, for respondent.

WOLFE, Chief Justice.

Action by the respondent to quiet title to 112 shares of stock in the Mendon Central Irrigation Company, a corporation, standing on the records of that corporation in the name of Andrew Andersen, appellant's intestate. The respondent claims title to the stock on the theory that it was an appurtenance to certain lands which she acquired in 1949 through mesne conveyances from Andrew Andersen. From a judgment quieting title to the stock in the respondent, the appellant brings this appeal.

In 1890 Andrew Andersen acquired title to a 17.53 acre and a 2 acre tract of land in Mendon, Cache County, Utah. Five years later in 1895, he conveyed the 17.63 acre

tract to one Quayle and one Cowley (apparently as a mortgage) who the next year, in 1896, re-conveyed the land to Sophia Andersen, wife of Andrew Andersen. In July, 1918, Andrew Andersen conveyed the 2 acre tract to her. Both tracts were farmed by Andrew Andersen from the time he acquired them in 1890 until his death in 1922. The lands were irrigated with waters arising and flowing from certain springs in the mountains west of Mendon. In February, 1918, Andrew Andersen and the other users of those springs, organized a corporation. The incorporators executed a Deed of Water Rights whereby they sold, assigned, transferred, conveyed and confirmed unto the Mendon Central Irrigation Company all their right, title and interest in and to the springs and the waters arising therefrom. In consideration of the Deed of Water Rights, the Irrigation Company issued certificates of stock to the incorporators for shares of stock in proportion to the water right which they had previously owned and had conveyed to the Irrigation Company. One hundred twelve shares were issued to Andrew Andersen and the records of that corporation still show him as the owner of that stock which is the subject of this lawsuit.

In 1924, Sophia Andersen conveyed the two tracts to her son, Lars M. Andersen, who farmed the land until his death in 1947. No mention was made in the deed to him about any water right or shares of stock, but he irrigated the lands with water from the Irrigation's Company's canal, the same as his father before him had done. Upon probate of the estate of Lars M. Andersen, the two tracts of land were distributed to certain of his heirs from whom the respondent subsequently purchased both tracts in 1949. In the decree of distribution following the description of the 17.63 acre tract were the words: "together with water right appurtenant thereto." No mention of water rights was made in the decree following the description of the 2 acre tract. In one of the deeds to the respondent from one of the distributees the words, "together with water right appurtenant thereto," again appear.

The appellant contends that by virtue of the Deed of Water Rights executed by Andrew Andersen and his wife to the corporation in 1918, the water right which had theretofore been appurtenant to the two tracts of land was legally severed from that land; that when those two tracts of land were conveyed in 1924 to Lars M. Andersen and no mention was made in the deed about any water right, he received the land without the water right represented by the 112 shares of stock, it having vested in the estate of Andrew Andersen upon his death in 1922; that because Lars M. Andersen had no interest in the water right represented by the stock, the respondent could have none either, she having purchased the lands from certain distributees of the estate of Lars M. Andersen.

At this point certain statutes should be noted which were in force and effect in July, 1918, when Andrew Andersen con-

veyed the two acre tract to his wife, Sophia, and in 1924 when Sophia Andersen conveyed both tracts to her son, Lars M. Andersen. Sections 3477 and 3478, Comp. Laws of Utah 1917, (re-enacted as Sections 15 and 16, Chap. 67, Laws of Utah, 1919) provided, respectively:

"A right to the use of water appurtenant to the land shall pass to the grantee of such land, * * *; provided, that any such right to the use of water, or any part thereof, may be reserved by the grantor in any such conveyance by making such reservation in express terms inserted in such conveyance, or may be separately conveyed."

"Water rights shall be transferred by deed in substantially the same manner as real estate, except when they are represented by shares of stock in a corporation, * * *."

Section 4881, Comp.Laws of Utah 1917, provided:

"Conveyances of land may be substantially in the following form: [setting out the statutory form of warranty deed]

"Such deed when executed as required by law shall have the effect of a conveyance in fee simple to the grantee, his heirs and assigns, of the premises therein named, together with all the appurtenances, rights and privileges thereunto belonging, * * *."

To sustain its contention the appellant relies upon George v. Robison, 23 Utah 79, 63 P. 819, decided by this court in 1901. There the plaintiff brought suit to recover damages for breach of warranty in a deed executed by the defendants to the plaintiff conveying certain land with the appurtenances thereunto belonging. Plaintiff claimed that the water used to irrigate the land at the time of the conveyance was appurtenant thereto and was included in the covenant of warranty. From the evidence it appeared that the water which had been used on the land for some years prior to and since the execution of the deed was obtained from the Corn Creek Irrigation Company, a corporation, which distributed the water from Corn Creek among its stockholders; that the grantors (defendants) owned no stock at the time of their conveyance to the plaintiff, but that the stock on which water was distributed to the land was owned by one Dorrity. About three years after the execution of the deed to the plaintiff by the defendants, Dorrity sold her stock, depriving the plaintiff of the use of any water from Corn Creek. We held that there was no evidence which justified a finding that the water was appurtenant to the land; that the conclusion was irresistible that the water rights were treated by the owners as personal property and not being expressly mentioned in the deed, were not conveyed with the land and hence no water rights were included in the warranty.

Because of the significant fact that the grantors in the George case owned no stock at the time of the conveyance to the plaintiff, that case is readily distinguishable from the instant case and is not controlling here. Instead, we think the instant case is controlled by In re Johnson's Estate, 64 Utah 114, 122, 228 P. 748, 751, which distinguished the George case on the ground just mentioned. In that case a testator devised a tract of land to the appellants but made no mention in his will of any water right. It was undisputed that a water right represented by stock owned by the testator in an irrigation company was used on the land and that the land was of little value without the water right. The trial court held that notwithstanding such facts the water stock was personal property and was not included in the devise to the appellants. This court, after noting sections 15 and 16, Chapter 67, Laws of Utah 1919, (set out in full above) stated:

"The latter provision [sec. 16] is obviously intended for the conveyance of water rights in cases where the water rights are severed from the land upon which the water has been used, and separately conveyed. In such a case, if the water right is represented by shares of stock in a corporation, the plain implication is that it may be transferred by a transfer of the certificate of stock, in the ordinary manner, as personal property. But that does not necessarily mean that water rights thus represented may not be an appurtenant to the land upon which the water is used, and pass as such with a conveyance of the land."

We quoted with approval the following statement from 2 Weil on Water Rights, (3rd Ed.) sec. 1269:

"So long as the company remains a purely mutual one, the certificate of stock represents the water right. A transfer or sale of the certificate is governed by much the same rules as those elsewhere considered regarding transfers of water rights. Whether the water right is an appurtenant to the stockholder's land is a question of fact in each case, as is also whether on a sale of the land the water right passes as [an] appurtenance. A sale of the certificate may be made separate from the land for use on other land and will transfer the water right * * *. On the other hand, in the absence of any separate sale of the certificate or of any other evidence of any express intention to make a severance, a sale of the land on which the water is used will carry the water right and a right to the certificate as an appurtenance."

While it is true, as appellant points out, that the Johnson case involved the construction of a will and not a deed, that difference is of no importance. The authorities which we relied upon in that case apply to deeds equally as well as wills. This court has in two subsequent cases applied the rule of the Johnson case to cases involving deeds.

Black v. Johanson, 81 Utah 410, 18 P.2d 901; In re Rice's Estate, 117 Utah 27, 39, 212 P.2d 685, 691.

■ Thus we conclude that in July, 1918, when Andrew Andersen conveyed the two-acre tract to his wife, Sophia, the trial court could find that there passed to her as an appurtenance to that land the water right which had been used on that land for many years, even though the water right was represented by shares of stock in the Irrigation Company, and even though no express mention of any water right was made in the deed to her. At the time of the organization of the Irrigation Company in February, 1918, she was the owner of the 17.63 acre tract and although the stock certificate issued by the Irrigation Company bore the name of Andrew Andersen, Sophia must be considered the equitable owner of that number of shares which represented the water right appurtenant to the 17.63 acre tract, which water right she and her husband conveyed to the Irrigation Company in payment of the stock. After receiving conveyance of the two acre tract in July, 1918, she was the owner of both tracts and the legal or equitable owner of all the 112 shares of stock in the Irrigation Company. When she conveyed both tracts to her son, Lars M. Andersen in 1924, without express mention of any water right, the trial court could find that there passed to him as an appurtenance to the land conveyed the water right represented by the 112 shares of stock.

Lars M. Andersen farmed the two tracts until his death in 1947. In 1943, the Legislature amended Section 100-1-10, Utah Code Annotated 1943, (formerly section 16, Chapter 67, Laws of Utah 1919) by adding the following italicized phrase:

"Water rights shall be transferred by deed in substantially the same manner as real estate, except when they are represented by shares of stock in a corporation, *in which case water shall not be deemed to be appurtenant to the land; * * *.*"

■ Appellant contends that this 1943 amendment is a clear announcement by the Legislature that a water right represented by shares of stock in a corporation cannot be appurtenant to the lands on which the water is used. It argues that the words, "shall not be deemed to be appurtenant", establish a conclusive presumption that the water right represented by the stock is not an appurtenance. The words "deem" and "deemed" when used in statutes have been construed to establish a conclusive presumption in some instances, but only a rebuttable presumption in other cases, depending largely upon the context in which they are used. See 11 Words and Phrases, p. 478. In some instances common sense demands that those words be construed to establish a conclusive presumption. For instance, in McCluskey v. Hunter, 33 Ariz. 513, 266 P. 18, 21, a statute provided that an office "shall be deemed" vacant if, among enumerated events, the incumbent ceases to dis-

charge the duties of his office for three consecutive months, except when prevented by illness, or when absent from the state by permission of the legislature. It was held that the words "deemed to be" were equivalent to saying that the office shall be vacant when that event occurs. A similar construction was given those words in State v. Holmes, 133 Wash. 543, 234 P. 275, 276, where a statute provided that attorneys failing to register before the first day of February in any year " 'shall be deemed suspended * * * until such registration shall have been made and the fee paid.' " In Ex parte Smith, 33 Nev. 466, 111 P. 930, 937, it was stated that the word "deemed" when used in penal statutes usually means a conclusive presumption, e. g. "every person committing certain acts 'shall be deemed guilty of burglary' ".

On the other hand, in Miller v. Commonwealth, 172 Va. 639, 2 S.E.2d 343, a statute providing that spirits in containers not bearing required government stamps or seals shall be "deemed" to have been illegally acquired, and that alcoholic beverages in possession of any person in amounts in excess of one gallon, in containers not bearing stamps or other evidence showing that they have been purchased from an authorized seller, shall be "deemed" to have been illegally acquired, was held to create a presumption which may be rebutted by opposing or contradictory evidence, and that it was not a conclusive presumption. Again, in Succession of Jackson, 47 La.Ann. 1089, 17 So. 598, 599, a statute providing that a legacy made to a creditor " 'shall not be deemed' " to be in compensation of the debt nor a legacy made to a servant in compensation of his wages, was held to establish a disputable presumption, subject to being overcome by evidence that such was not the testator's intent. It is interesting to note that the Supreme Court of Oregon gave a contrary construction to a somewhat similar statute providing that a will made by any person " 'shall be deemed' " revoked by his or her subsequent marriage. In re Shepherd's Estate, 183 Or. 629, 194 P.2d 425, 426. See Jackson v. James, 97 Utah 41, 89 P.2d 235, when we construed "deemed" to be non-conclusive.

We think the effect of the 1943 amendment to section 100–1–10, U.C.A. 1943 (now 73–1–10, U.C.A.1953) which added the phrase, "in which case water shall not be deemed to be appurtenant to the land" was to establish a rebuttable presumption that a water right represented by shares of stock in a corporation did not pass to the grantee as an appurtenance to the land upon which the water right was used, but that the grantee could overcome such presumption if he could show by clear and convincing evidence that said water right was in fact appurtenant and that the grantor intended to transfer the water right with the land, even though no express mention of any water right was made in the deed. Under section 73–1–11, U.C.A.1953, (formerly section 15, Chap. 67, Laws of Utah 1919) a right to the use of water ap-

purtenant to land passes to the grantee unless there is an express reservation thereof by the grantor in the deed. The 1943 amendment to section 73–1–10 made water rights represented by shares of stock in a corporation presumably not appurtenant and hence such a water right, even though not expressly reserved in the deed, would not pass to the grantee in the absence of clear and convincing evidence that the grantor so intended. In other words, the 1943 amendment merely obviated the necessity for a grantor, who owned a water right represented by shares of stock in a corporation but who did not desire to transfer that water right to the grantee of the land upon which the water was being used, to make an express reservation of that water right in the deed. But the amendment does not foreclose the water right from passing if the grantee can show such was the intention of the grantor. The amendment has the effect of placing the burden of proof on the party who alleges that despite the fact that the certificate of stock was not endorsed and delivered to the grantee, the water right represented by the certificate was as a matter of fact appurtenant to the land conveyed and that the grantor intended that it pass with the land.

In the instant case, the trial court was justified in finding that the water right represented by the 112 shares of stock in the Irrigation Company was intended to pass with the land to the distributees of the estate of Lars M. Andersen and from them

to the respondent. The water had been used to irrigate the land since 1890. The land had little value without the water. The land was appraised by the probate court appraisers on the assumption that the water went with the land. In the decree of distribution, following the description of the 17.63 acre tract, the words, "together with water right appurtenant thereto" were added. Apparently, the respondent paid her grantors for the land on the basis that the water went with the land. The lower court could find that the statutory presumption that the water right was not appurtenant to the land, section 73–1–10, and hence did not pass with the land under section 73–1–11, was sufficiently rebutted by the evidence.

The judgment below is affirmed. Costs to respondent.

McDONOUGH, CROCKETT and WADE, JJ., concur.

HENRIOD, Justice (dissenting).

I dissent. There appears to be no authority for the main opinion's interpretation of the amendment of Title 100–1–10, U.C.A. 1943 (now 73–1–10, U.C.A.1953) save its own ipse dixit. The law in Utah on appurtenancy of water to land, where shares of stock evidence the right of use, was, in my opinion, so confused as to induce the legislature to make certain that which was uncertain by giving full and separate ownership of water rights, apart from use on any particular land, to the holder of a

certificate from a water company evidencing such right. Before the amendment, whether a certificate of water stock evidenced ownership of water apart from the land, was a matter of presumption and proof, as the main opinion makes it here, and it is difficult to see what purpose the amendment accomplished in the light of this decision. I believe the main opinion will come as a shock to the thousands of water users who have acquired their rights by purchase of shares in a water company, thinking that they acquired full ownership of the right to use the water,—not something less, which may involve a lawsuit where ownership may depend on presumption or the lack of it.