**Weldon ABBOTT, Plaintiff and Appellant,**

v.

**Newell CHRISTENSEN, Defendant and Respondent.**

**No. 17616.**

Supreme Court of Utah.

March 15, 1983.

Wallace D. Hurd, Salt Lake City, for plaintiff and appellant.

George E. Mangan, Roosevelt, for defendant and respondent.

OAKS, Justice:

This is an appeal and cross-appeal from a decree in the nature of an accounting on termination of a joint venture.

The venture began in 1970 as an arrangement by which rancher Newell Christensen would live on a ranch owned by Dr. Abbott and care for Abbott's cattle, with each party receiving one-half of the net proceeds from sale of the calves. Thereafter, by mutual consent but with minimum written formalities, the venture expanded gradually with the purchase of about seven additional ranch properties. In the summer of 1974, the parties agreed to terminate their joint venture. In accordance with their oral agreement, they divided the real property. Controversies over the division of other properties, including cattle and shares of stock in an irrigation company, resulted in three different lawsuits. These were consolidated for trial before a special master appointed by stipulation of the parties. After receiving the master's report, the court heard arguments and entered a decree in which Christensen was the "prevailing party." Abbott took this appeal and Christensen cross-appealed.

Abbott has eight assignments of error; Christensen has three. Only one alleged error, Abbott's argument on the disposition of the water stock, poses a legal issue.

The other ten alleged errors are essentially factual—contentions that "the evidence clearly preponderates against the findings of the trial court," or that the decree of the trial court was not fair and equitable (such as in its failure to award attorney fees to the prevailing party). Our consideration of these factual issues has been materially aided by the manner in which the briefs of the parties join issue precisely on each point, with adequate explanation and argument and with suitable references to the record.

I.

No useful purpose would be served by summarizing our review of each alleged error of fact or fairness. Suffice it to say that with the sole exception discussed below, neither party has persuaded us that the evidence preponderates against any of the findings of the trial court or that any one of its decisions was beyond the proper bounds of its discretion. *See generally, Gillmor v. Gillmor,* Utah, 657 P.2d 736 (1982); *Jensen v. Brown,* Utah, 639 P.2d 150, 151–52 (1981).

The only exception is the district court's finding with respect to the Zane Christensen transaction. Abbott and Christensen purchased a ranch from Zane Christensen on June 19, 1974, with a down payment of $50,000. In November, 1974, the parties defaulted on the contract payments and forfeited the down payment and their interest in the land. At trial, Abbott claimed that he had contributed the $50,000 for the down payment and should therefore receive credit for it in the joint venture accounting. The district court refused to rule on Abbott's claim, finding that the transaction "was not a matter involved in any agreement which is the subject of litigation in this case."

We disagree. In his counterclaim, Christensen expressly requested "an accounting of . . . all contributions made by each of the parties [to the joint venture] . . . ." Both parties acknowledged during trial that such an accounting was desired, and both stipulated that the special master consider the contributions made by each party. Consequently, since Abbott's claim concerned a party's contribution and it was undisputed at trial that the ranch was part of the joint

venture, the district court should have made a determination with respect to the $50,000, using U.C.A., 1953, § 48–1–37(2) as a guide. *See Ream v. Fitzen,* Utah, 581 P.2d 145, 148 (1978).

## II.

■ In the sole legal issue presented for our consideration, Abbott argues that the court erred in awarding Christensen 424 shares of stock in the Farnsworth Canal Irrigation Company. These shares had been purchased with the Reary Place in 1971, and, except for a period of one year after the parties' controversy arose, the water they represent had been used on the Reary Place at least since the 1930s.

Christensen received the Reary Place under the parties' division of real property. However, the real estate contract Abbott prepared and the parties signed on December 21, 1974, to give effect to that part of their division did not make specific mention of these shares of stock. Consequently, Abbott argued when he first raised this contention in 1977 that the real estate contract did not transfer ownership of irrigation company stock to Christensen. The district court found that the parties agreed and intended that this stock was included in the contract. Abbott argues that this decision is erroneous under the presumption established in U.C.A., 1953, § 73–1–10, as interpreted in *Brimm v. Cache Valley Banking Co.,* 2 Utah 2d 93, 269 P.2d 859 (1954), and *Hatch v. Adams,* 7 Utah 2d 73, 318 P.2d 633 (1957).

The *Brimm* case construes § 73–1–10 [1] as establishing a rebuttable presumption that the water right represented by shares of stock in an irrigation company does not automatically pass to a grantee as appurtenant to the land upon which the water is being used at the time of the grant. *Compare* § 73–1–11. However, the case further holds that irrigation company stock will pass under the deed where the grantee or

those claiming under him, who have the burden of proof on this issue, can show by "clear and convincing evidence" that "the water right represented by the certificate was as a matter of fact appurtenant to the land conveyed and that the grantor intended that it pass with the land." 2 Utah 2d at 100, 269 P.2d at 864. *Brimm* affirmed the district court's conclusion that a person claiming under the distributees of an estate had met that burden where the water had been used to irrigate the land for many years, where the land had little value without the water, where the probate appraisers had apparently assumed (without challenge) that the water went with the land, where the decree of distribution used the words "together with water right appurtenant thereto," and where the party purchasing from the distributees had paid on the basis that the water right went with the land.

*Hatch v. Adams, supra,* involved the effect of a uniform real estate contract. Again, this Court affirmed the findings and conclusion of the district court, but in *Hatch* that court had held that the irrigation stock was not appurtenant. There the contract specifically included "all water rights appurtenant thereto," and the accompanying escrow agreement specifically listed 14 shares in a Lehi company and 36 shares in an Alpine company, but made no mention of the 7½ shares in the Provo company whose ownership was in issue in the *Hatch* litigation. Noting that this would be a "different situation" if the seller had no other water than the 7½ shares of stock in question ("so that the reference to appurtenant water could not refer to any other water," 7 Utah 2d at 76, 318 P.2d at 634), this Court noted the presumption that the water represented by the 7½ shares did not pass to the grantee and sustained the finding that this presumption had not been rebutted.

As explained below, after reviewing the evidence in this case in light of the prece-

---

1. U.C.A., 1953, § 73–1–10 provides: "Water rights ... shall be transferred by deed in substantially the same manner as real estate, except when they are represented by shares of stock in a corporation, in which case water shall not be deemed to be appurtenant to the land ...."

dents in *Brimm* and *Hatch,* we are unable to conclude that it "clearly preponderates against" the findings of the district court on this issue.[2] We therefore sustain the district court's conclusion that Christensen rebutted the statutory presumption by clear and convincing evidence, and acquired ownership of the irrigation company stock under the real estate contract.

Abbott relies on the rule that proof of use "by the owner of the land during the entire period of his ownership of the land is not alone sufficient to rebut the presumption that such water is not to be deemed appurtenant." *Hatch,* 7 Utah 2d at 75–76, 318 P.2d at 634. But here, as in *Brimm,* the water at issue had been used on the land for over forty years, a period much longer than the current ownership. And here, there was much more evidence in support of the court's conclusion. As in *Brimm,* this land would have comparatively little value without the water, and the parties apparently assumed that the right to the water went with the land. Both Abbott and Christensen conducted themselves in that manner until more than two years after the contract was signed, when Abbott made the ownership of the water stock a counter in the larger and evolving controversy between the parties.

Finally, and most importantly, the real estate contract of December 21, 1974, contains persuasive internal evidence that the parties intended that the water stock be included in the sale. The typewritten contract, whose ambiguities must be interpreted against Abbott as the party who drew it, *Bryant v. Deseret News Publishing Co.,* 120 Utah 241, 242, 233 P.2d 355, 356 (1951), contains the following provisions under the headings noted:

ABSTRACT OF TITLE, WARRANTY DEED, ETC.:

The Sellers agree that they will deposit with this agreement the following instruments:

Warranty Deed, *Water Certificate,* Bill of Sale.

\* \* \* \* \* \*

POSSESSION, TIME OF ESSENCE, GRACE AND DEFAULT:

. . . [I]f the said Buyers shall . . . fail to pay the taxes or *water assessments* on the said property when the same shall become due, then [after notice Sellers may declare the agreement void and Buyers forfeit all rights].[3] [Emphasis added.]

Abbott testified that the water certificate provision referred to another 30 shares of water stock he had agreed to transfer so Christensen could use them in an exchange with a third party, a transaction apparently unrelated to the Reary Place. The court was not required to believe that testimony, and if it was disbelieved in favor of Christensen's contrary testimony, as we are bound to assume for purposes of this review, there was no water to which the above provision could have referred except the 434 shares of Farnsworth stock involved in this controversy. So viewed, this case is distinguishable from *Hatch* on the precise basis identified in that opinion, discussed earlier.[4]

---

**2.** The "clearly preponderates standard" is still the standard of appellate review of findings in equity cases, even where the level of proof in the trial court is "clear and convincing evidence." As we said in *Matter of Estate of Hock,* Utah, 655 P.2d 1111, 1114–15 n. 1 (1982), "[a] determination by this Court that the evidence 'clearly preponderates against' a trial court's finding requires a smaller quantum of contrary evidence, and a less stringent appraisal of its quality, when the trial court's finding is based upon a 'clear and convincing' standard, rather than a 'preponderance of the evidence' standard."

**3.** The irrigation company stock is not mentioned under "PROPERTY SOLD," but neither are water rights included among the other rights (mineral) specifically reserved.

**4.** Abbott argues that the specified value of the Reary Place without the water supports his argument that the water stock was not intended to be included in the contract of sale to Christensen. We are unpersuaded by this argument. Abbott testified that the 1974 value without water was the same as the price at which Christensen purchased it. However, Christensen testified that the parties agreed that Abbott was not to make a profit on the

For all of these reasons, we sustain the district court's conclusion that the irrigation company stock was included in the contract sale of the land.

The decree of the district court is affirmed, except insofar as it failed to consider Abbott's claim to a $50,000 credit arising from the Zane Christensen transaction, as to which the cause is remanded to the district court for further proceedings consistent with this opinion. No costs awarded.

HALL, C.J., and STEWART, HOWE and DURHAM, JJ., concur.

sale of the Reary Place, and, accordingly, the 1974 purchase price did not represent the value (with or without water), but simply the amount Abbott originally paid for the property, plus interest. In view of the district court's holding on this issue, we assume the court accepted Christensen's version of the facts, which is adequately supported in the record.